# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| DEMETRIUS JOHNSON,<br><br>  Movant,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>  Respondent. | No. C21-3021-LTS<br>(Criminal No. CR19-3037-LTS)<br><br>**MEMORANDUM<br>OPINION AND ORDER** |

## I.  INTRODUCTION

This matter is before me on Demetrius Johnson's motion (Doc. 1) to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. Johnson alleges he is entitled to relief based on eight claims of ineffective assistance of counsel. On initial review, I found that five claims (Claims 3, 4, 5, 6 and 8) should proceed. Doc. 2 at 12. Pursuant to my order, Johnson's prior counsel (Van Plumb) filed an affidavit (Doc. 7) in response to Johnson's claims. The Government has filed a response (Doc. 10). I find that an evidentiary hearing is required on Count 8. All other claims are resolved herein.

## II.  BACKGROUND

On August 22, 2019, Johnson was indicted on five counts related to conspiracy to distribute a controlled substance, possession with intent to distribute a controlled substance and possession of a firearm. Crim. Doc. 2. Pursuant to a plea agreement, he pleaded guilty on January 24, 2020, to Count 1, conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846 and 851, and Count 5, possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(3) and 924(a)(2). Crim. Docs. 31, 33. On June 23, 2020, I sentenced Johnson to 292 months' imprisonment on Count 1 and 120 months' imprisonment on Count 5, to

be served concurrently, and ten years of supervised release. Crim. Doc. 42. He did not file an appeal. Johnson signed the present motion on June 22, 2021, and mailed it to the court on July 6, 2021.

### III. LEGAL STANDARDS

#### A. Section 2255

A prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside or correct a sentence. *See* 28 U.S.C. § 2255(a). To obtain relief, a federal prisoner must establish:

> [T]hat the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or [that the judgment or sentence] is otherwise subject to collateral attack.

*Id.*; *see also* Rule 1 of the Rules Governing § 2255 Proceedings (specifying scope of § 2255). If any of the four grounds are established, the court is required to "vacate and set the judgment aside and [to] discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

When enacting § 2255, Congress "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (citation omitted). Section 2255 does not provide a remedy for "all claimed errors in conviction and sentencing." *Id.* (citation omitted). Rather:

> Relief under [§ 2255] is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice.

*United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (citation omitted); *see also Sun Bear*, 644 F.3d at 704 ("[T]he permissible scope of a § 2255 collateral attack . . . is severely limited[.]"). A collateral challenge under § 2255 is not interchangeable or substitutable for a direct appeal. *See United States v. Frady*, 456 U.S. 152, 165 (1982)

("[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal."). Consequently, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Id.* (citation omitted).

"Evidentiary hearings on [§ 2255] motions are preferred, and the general rule is that a hearing is necessary prior to the motion's disposition *if a factual dispute exists*." *Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir. 2013) (emphasis added). "The district court is not permitted to make a credibility determination on the affidavits alone." *Id.* at 1206; *see also United States v. Sellner*, 773 F.3d 927, 930 (8th Cir. 2014) ("[The] district court abused its discretion when it credited the attorney's affidavit over the petitioners without first holding an evidentiary hearing."). However, no hearing is required "where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *See New v. United States*, 652 F.3d 949, 954 (8th Cir. 2011) (citation omitted).

### B. *Ineffective Assistance of Counsel*

To establish a claim for ineffective assistance of counsel, a movant must prove that his attorney's representation "was 'deficient' and that the 'deficient performance prejudiced the defense.'" *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Deficient" performance is performance that falls "below an objective standard of reasonableness," *Lafler v. Cooper*, 566 U.S. 158, 163 (2012) (citation omitted), that is conduct that fails to conform to the degree of skill, care and diligence of a reasonably competent attorney. *Strickland*, 466 U.S. at 687. Matters of trial strategy are generally entrusted to the professional discretion of counsel and they are "virtually unchallengeable" in § 2255 proceedings. *Loefer v. United States*, 604 F.3d 1028, 1030 (8th Cir. 2010). Counsel is not constitutionally ineffective because of the failure to raise a "relatively sophisticated" and "counter-intuitive argument." *Donnell v. United States*, 765 F.3d 817, 821 (8th Cir. 2014). However, "[s]trategy resulting from lack of diligence in preparation and

3

investigation is not protected by the presumption in favor of counsel." *Holder v. United States*, 721 F.3d 979, 994 (8th Cir. 2013) (citation omitted).

To establish "prejudice," a movant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler*, 566 U.S. at 163 (citation omitted). "Reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. That requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 112 (2011). Ultimately, a showing of "prejudice" requires counsel's errors to be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 104 (citation omitted).

Since a movant must show both deficient performance and prejudicial effect, a court reviewing ineffective assistance claims need only address one prong if either fails. *See Williams v. United States*, 452 F.3d 1009, 1014 (8th Cir. 2006). Additionally, each individual claim of ineffective assistance "must rise or fall on its own merits," meaning that courts should not take into account the "cumulative effect of trial counsel's errors in determining *Strickland* prejudice." *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006); *United States v. Brown*, 528 F.3d 1030, 1034 (8th Cir. 2008) ("[W]e have repeatedly rejected the cumulative error theory of post-conviction relief.").

"The Sixth Amendment right to effective assistance of counsel includes representation during the plea bargaining process." *Mayfield v. United States*, 955 F.3d 707, 712 (8th Cir. 2020) (citing *Missouri v. Frye*, 566 U.S. 134, 143-47 (2012)). The two-part *Strickland* test "applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Therefore, he must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 57. In the plea context, the movant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would

4

have insisted on going to trial." *Id.* at 59. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," which "requires a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quotations omitted).

Whether there is a reasonable probability is a fact-dependent question that requires consideration of any "contemporaneous evidence to substantiate [the] defendant's expressed preferences." *Mayfield*, 955 F.3d at 712 (quoting *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) (internal quotation marks omitted)). "A defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Adams v. United States*, 869 F.3d 633, 635 (8th Cir. 2017). *See also United States v. Miley*, 119 F. App'x 330, 332 (2d Cir. 2005) (concluding any prejudice from any misrepresentations by defense counsel about the consequences of a guilty plea was dispelled by the time the defendant pleaded guilty based on the court's colloquy during the plea hearing); *United States v. Lemaster*, 403 F.3d 215, 221-22 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.").

## IV. DISCUSSION

Of Johnson's five remaining ineffective assistance of counsel claims, four relate to the plea phase and one to the appeal phase. I will address each in turn.

### A. *Ineffective Assistance of Counsel During Plea Phase*

Johnson asserts his counsel, Plumb, was ineffective for (1) failing to challenge the base offense level for Count 1 in the plea agreement (Claim 3); (2) failing to challenge the drug quantity in the plea agreement (Claim 4); (3) failing to challenge the

5

enhancements in the plea agreement as inapplicable to Count 1 and as lacking factual basis (Claim 5); and (4) providing erroneous advice about his potential sentence (Claim 6). Doc. 1 at 5-11.

### 1. *Claim 3 – Failure to Challenge the Base Offense Level*

Johnson argues Plumb should have challenged the base offense level of 36 identified in the plea agreement. He notes the total drug quantity alleged in the Government's plea agreement was between 1500 grams but less than 5000 grams of methamphetamine, making the appropriate base level 32 rather than 36 under United States Sentencing Guideline (USSG) § 2D1.1.[1] Johnson argues this led to a substantial increase in his guideline range, and thus, his sentence.

The Government explains that the base offense level was calculated using a converted drug weight because multiple drugs were involved. *See* USSG § 2D1.1, Application Note 7. It also points out that the court discussed this with Johnson at the plea hearing and he indicated he understood.[2] Plumb notes the same in his affidavit and states this was explained to Johnson. *See* Doc. 7 at 1. Plumb also notes that a maximum

---

[1] Johnson acknowledges that other paragraphs in the plea agreement (D, E, F, G, and I on page 4 allege other drugs and quantities). *See* Doc. 1 at 6.

[2] *See* Crim. Doc. 50 at 20-21:

> The Court: Now, you and the government are making some recommendations, and this is specifically in paragraphs 13 subparagraphs A through G on pages 6 and 7 of the plea agreement about the sentencing guidelines. You recommend that the judge use a base offense level or starting point for Count 1, the conspiracy charge, of at least 26. That's based upon the amount of methamphetamine involved. The government's free to argue for and present evidence on higher drug quantity for a higher base offense level. But you're agreeing it would be at least 36 and that there should be a 2-level increase because you possessed a dangerous weapon in connection with the conspiracy . . . . Do you understand those are the recommendations you and the government are making?
>
> The Defendant: Yes, Your Honor.

6

Case 3:21-cv-03021-LTS-KEM   Document 19   Filed 02/09/24   Page 6 of 19

quantity was not identified in the plea agreement and that the plea agreement specifically stated the Government could, at its option, present evidence to support a higher base level if warranted. Plumb states that he did not dispute the converted drug quantity for the additional reason that if the Government was forced to present evidence at a hearing, it could have showed a greater length of conspiracy and increased the actual amount of controlled substances attributed to Johnson. *Id.* at 2.

Having reviewed the plea agreement, the Government and Plumb are correct that the base offense level of "at least 36" identified in paragraph 13(A) of the plea agreement is based on a converted drug weight taking into account not only the "at least 1500 grams of a mixture or substance containing a detectable amount of methamphetamine" but also the other drugs and quantities identified in paragraphs 10(B), (D), (E), (F), (G) and (I).[3] Section 2D1.1(a)(5) of the Guidelines instructs the court to apply the base offense level specified in the drug quantity table set forth in subsection (c) except under certain scenarios. The drug conversion tables provide that one gram of methamphetamine equals two kilograms of converted drug weight and one gram of actual methamphetamine equals 20 kilograms of converted drug weight. One gram of marijuana equals one gram of converted drug weight.

The converted drug weight from the above-identified paragraphs in the plea agreement falls well within the 30,000 kilograms but less than 90,000 kilograms of converted drug weight for base offense level 36. Based on the Government's reservation of its right to "present evidence and arguments to support the stipulation and, if warranted, a higher base offense level," *see* Doc. 7 at 17, as well as Plumb's concern

---

[3] These paragraphs identify the following drugs and quantities:
(B) – 500 grams or more of methamphetamine and/or 50 grams of actual (pure) methamphetamine
(D) – 4.17 grams of 100 percent pure methamphetamine
(E) – 13.78 grams of 99.8 percent pure methamphetamine
(F) – 27.76 grams of 99.2 percent pure methamphetamine
(G) – 5.04 grams of 100 percent pure methamphetamine and 572.54 grams of marijuana
(I) – 4.5 pounds (or 2,041 grams) of pure methamphetamine

7

that a higher base level could be established through evidence, Plumb's performance did not fall below an objective standard of reasonableness in failing to object to a base level of 36 in the plea agreement. Nor can Johnson demonstrate prejudice. This claim of ineffective assistance of counsel fails.

### 2. *Claim 4 – Failure to Challenge the Drug Quantity in the Plea Agreement*

Johnson argues Plumb failed to challenge the drug quantities in (1) paragraph A on page 6 of the plea agreement (identifying at least 1500 grams of a methamphetamine mixture for Count 1) and (2) paragraph I on page 5 (identifying 4.5 pounds of pure methamphetamine discovered during a search on August 1, 2019), on grounds that the drug quantities were not foreseeable as to the conspiracy as alleged in Count 1. Johnson explains that when he was arrested on August 1, 2019, the alleged conspiracy had already ended. He contends the foreseeable quantity is identified only in paragraphs D, E, F and G on page 4 of the plea agreement, totaling 50.75 grams of a methamphetamine mixture. As such, he argues his base offense level should have been 24. Alternatively, Johnson argues counsel should have challenged the drug quantity alleged in paragraph A on page 6 on grounds that the indictment charged him with conspiracy based on 500 grams of a methamphetamine mixture, not "at least 1500 grams" as stated in the plea agreement. As a result of these alleged errors, Johnson argues his base offense level and sentence were substantially increased resulting in prejudice.

The Government cites Plumb's affidavit (Doc. 7 at 2-3), noting that Plumb discussed the Government's evidence against Johnson (including on Counts 2, 3, and 4) before deciding to enter a guilty plea on Count 1 – the conspiracy charge. It notes that Plumb believed the Government would be able to prove not only the drug quantity attributed to Johnson during the course of the charged conspiracy, but could also identify and prove additional individuals with whom Johnson conspired to carry out the conspiracy, including those not identified in the plea agreement. The Government argues this was a strategic choice that is unchallengeable. Additionally, it notes that I granted a

8

Case 3:21-cv-03021-LTS-KEM   Document 19   Filed 02/09/24   Page 8 of 19

downward variance at sentencing and made an automatic adjustment based on drug quantity scoring, reducing Johnson's base offense level from 36 to 32.

The Indictment alleged that between Fall 2017 and continuing to on or about August 2019, Johnson conspired to distribute 500 grams *or more* of a methamphetamine mixture and/or 50 grams of actual (pure) methamphetamine. Crim. Doc. 2 at 2 (emphasis added). Count 2 alleged on or about August 1, 2019, Johnson possessed with intent to distribute 500 grams or more of a methamphetamine mixture and/or 50 grams of actual (pure) methamphetamine. *Id.* at 3. Count 3 alleged on or about December 29, 2017, Johnson possessed with intent to distribute 5 grams or more of pure (actual) methamphetamine. *Id.* Count 4 alleged on or about January 12, 2018, Johnson possessed with intent to distribute 5 grams or more of pure (actual) methamphetamine. *Id.* at 4. The Indictment clearly alleged that the conspiracy extended to August 2019, which would include the substances found on the day Johnson was arrested.

While I do not have access to the Government's discovery file, the presentence investigation report (PSR) provides some indication of the offense conduct and how the parties agreed to a base level of 36 based on converted drug weight quantity.[4] Crim. Doc. 39 at 4-10. Based on this information, and the fact that the Government reserved the right to present evidence to support an even higher base offense level, it was not objectively unreasonable for counsel not to challenge the quantities identified in paragraphs 13(A) and 10(I) of the plea agreement. Moreover, Johnson cannot demonstrate prejudice given that the Government could have presented evidence supporting an even greater amount. This claim of ineffective assistance of counsel fails.

---

[4] Based on the offense conduct, the PSR recommended Johnson be held accountable for 69,442.82 kg of converted drug weight, which included 3,447.74 grams of "ice" methamphetamine and 226.8 grams of methamphetamine mixture. Doc. 39 at 10.

9

### 3. *Claim 5 – Failure to Challenge the Enhancements as to Count 1*

Johnson argues Plumb was ineffective for failing to challenge the enhancements contained in paragraphs B and D on page 6 of the plea agreement. He argues that the two-point enhancement in paragraph B for possession of a dangerous weapon pursuant to USSG § 2D1.1(b)(1) was inapplicable because the possession had to occur during the commission of the offense and that the enhancement was based on firearms allegedly found on January 15, 2018. Johnson states he was not present at this location and it was not his legal residence. Additionally, marijuana was found with the firearms and the alleged conspiracy involved methamphetamine. Therefore, he argues there is no evidence that he possessed a dangerous weapon during the commission of the conspiracy. He also argues that the two-point enhancement in paragraph D for being an organizer, leader, manager or supervisor in criminal activity pursuant to USSG § 3B1.1(c) is inapplicable due to a lack of evidence.

With regard to the firearm enhancement, Plumb states that he discussed with Johnson what the Government would have to prove to establish that enhancement. He explained *United States v. Anderson*, 618 F.3d 873 (8th Cir. 2010), to Johnson and reviewed the Government's discovery relevant to the issue. He explains his plea negotiation process based on his discussions with Johnson and notes that he informed Johnson there was a chance the Government could charge him with possession of weapons in furtherance of a drug crime if Johnson chose not to plead guilty to some charges.

With regard to Johnson's role in the offense, Plumb states that discovery demonstrated that the Government had either cooperating witnesses, or individuals who had been debriefed, who could provide direct and circumstantial evidence that Johnson could be found to be an organizer, leader, manager or supervisor. Some of this evidence is discussed in the PSR. The Government also notes that Judge Mahoney discussed each

10

of these enhancements with Johnson during the plea hearing and Johnson expressed understanding that he had agreed to those enhancements at that time.[5]

Section 2D1.1(b)(1) provides: "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels." The application note for this subsection provides:

> The enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet.

Application Note 11 to USSG § 2D1.1(b)(1). In *Anderson*, the court noted the Government must prove two things for this enhancement to apply: (1) the gun was possessed and (2) it was not clearly improbable that the weapon was connected to the drug offense. *Anderson*, 618 F.3d at 880. The court stated "[i]t is not necessary that an individual be observed using the weapon, and either actual or constructive possession is sufficient, i.e., the individual must have exercised 'ownership, dominion, or control' either over the firearm or the premises on which it is found." *Id.* (citing *United States v. Payne*, 81 F.3d 759, 762 (8th Cir. 1996)). In *Anderson*, the court found that a handgun found in a safe in a storage unit in someone else's name was sufficient to apply the enhancement because the defendant had admitted he placed the handgun in the storage unit, the keys seized from defendant were used to open the storage unit and the safe and there was evidence linking defendant and the person whose name was on the storage unit to drug activity. *Id.* at 881-82.

---

[5] Crim. Doc. 50 at 20-21:

> Court: But you're agreeing it would be at least 36 and that there should be a 2-level increase because you possessed a dangerous weapon in connection with the conspiracy . . . . You also recommend that the judge should include a 2-level increase based upon your role in this offense . . .. Do you understand those are the recommendations you and the government are making?
>
> Defendant: Yes, Your Honor.

11

The PSR indicates that this enhancement was based on a search of a storage unit. A key for the storage unit was found at Johnson's residence. *See* Doc. 39 at 5-6. Law enforcement had previously searched the residence of an associate of Johnson's who also had a key to this storage unit. This individual allowed Johnson to drive vehicles registered in her name, including a 2012 white Dodge Charger. Johnson was observed driving this vehicle and it had been observed in close proximity to drug deals. *Id.* at 4-5. The Dodge Charger was found in the storage unit, where law enforcement located multiple firearms in the trunk along with marijuana. *Id.* at 6. Law enforcement interviewed Johnson's associate, who stated that she did not have control of the vehicle and Johnson had instructed her to pay for the storage locker. She also provided an unlock code for one of the cell phones seized from Johnson, which contained drug-related text messages. *Id.* The PSR also explains that the offense conduct involved controlled substances other than methamphetamine. *Id.* at 4-9.

Based on this evidence, it was not objectively unreasonable for Plumb to decide not to raise a challenge to the application of a § 2D1.1(b)(1) enhancement in the plea agreement, particularly in light of the consideration that the Government could have brought a separate charge based on the same evidence if Johnson had chosen to go to trial rather than enter a guilty plea. Johnson's ineffective assistance of counsel claim on this basis fails.

With regard to the role enhancement, § 3B1.1(c) provides: "If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels." The PSR names multiple individuals who either admitted to dealing methamphetamine at Johnson's direction or undertook other actions in furtherance of the conspiracy. These individuals also identified other associates who would distribute methamphetamine for Johnson. *See* Doc. 39 at 4-9. Based on this evidence, it was not objectively unreasonable for Plumb to decide not to raise a challenge to the application of a § 3B1.1(c) enhancement in the plea agreement. Johnson's ineffective assistance of counsel claim fails on this basis as well.

### 4. *Claim 6 – Advice on Potential Sentence*

Johnson claims Plumb provided erroneous advice that affected his understanding of the sentence he faced prior to entering into the plea agreement. He states that this occurred during plea negotiations sometime between December 2019 and January 2020. He contends the proposed plea offer included a base offense level of 36 with a criminal history category IV and that his base offense level would be reduced by three levels for acceptance of responsibility. Doc. 1 at 10. Thus, Johnson states he understood his guideline range to be 188 to 235 months and adds that counsel told him he would likely receive the lower end of that range. Johnson also alleges that counsel advised that the Government would drop the § 851 enhancement if he accepted the plea offer and "would not face any potential sentencing enhancements." *Id.* at 11. Johnson alleges that but for this advice, he would not have accepted the plea, which resulted in a significantly higher sentence.

In his affidavit, Plumb states that Johnson's assertions are simply not true and that through multiple in-person and telephonic consultations, Johnson was well aware that Count 1 was punishable by a mandatory minimum sentence of 15 years imprisonment, and up to life, and that Count 5 was punishable by a maximum penalty of not more than 10 years imprisonment. Doc. 7 at 4. He states he never advised Johnson that his guideline range would be reduced to 188 to 235 months or told him that he would receive the lower end of that guideline range. He also notes that Johnson knew he was facing a § 851 enhancement, as the plea agreement clearly stated:

> 1. Defendant will plead guilty to Counts 1 and 5 of the Indictment filed on August 22, 2019. Count 1 charges conspiracy to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A), 846 and 851. Count 5 charges possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1), 922(g)(3) and 924(a)(2). Counts 2, 3, and 4 will be dismissed at the time of sentencing.

Doc. 7 at 12. The next two paragraphs also provide the mandatory minimum sentence of 15 years on Count 1 and up to 10 years on Count 5. *Id.* Plumb explains that he

attempted to obtain an agreement pursuant to Rule 11(c)(1)(C), but that request was denied on December 6, 2019. Plumb states he informed Johnson of this, at which point he entered into the written plea agreement after a full review and explanation of its terms as well as the evidence that supported such terms. *Id.* at 4-5.

The Government notes that Judge Mahoney covered potential penalties and consequences at length during the plea hearing and Johnson indicated he understood and had no questions. It notes that Johnson was subject to increases to his base offense level, but that he did receive a three-point reduction for acceptance of responsibility in addition to a downward variance at sentencing that reduced his base offense level to 32. Because of the upward adjustments (outlined in the plea agreement), his total offense level ended up being 35, making his guideline range 292 to 365 months' imprisonment.

During the plea hearing, Judge Mahoney discussed the penalties and consequences of pleading guilty to Counts 1 and 5 as follows:

> The Court: For Count 1, if you plead guilty, you could be sentenced for a period. It would be for at least 15 years. That's the mandatory minimum sentence. And it could be all the way up to the maximum which is life in prison.
> After serving any prison sentence – and Mr. Lammers, there's a discrepancy between the Rule 11 letter and the plea agreement on the supervised release term. It has in the plea agreement that it's 10 years to life. Rule 11 has 5 to life.
>
> Mr. Lammers: It's 10 years to life based on the – based on the 851 notice, and I think that is actually – as you stated, it is in the plea agreement, so he is aware of the penalties that he faces.
>
> The Court: All right. So after any prison sentence for Count 1, Mr. Johnson, you could be sentenced or placed on supervised release – and I'll explain that here in a minute – but for at least 10 years, and it could be up to the rest of your life. In addition, the judge could order you pay a fine, and the maximum fine for Count 1 is 20 million dollars.
> Now, for Count 5, the firearm charge, you could be placed – or sentenced to prison for up to 15 years – sorry, 10 years; that's the maximum. The maximum term of supervised release is up to or not more than 3 years. The maximum fine is $250,000.

14

Now, if at sentencing, though, the judge finds that you have 3 or more prior convictions for either a violent felony or a serious drug offense or some combination of those, the penalties change under the Armed Career Criminal Act.

So rather than a 15 – or a 10-year – excuse me, 10-year maximum sentence for Count 5, the mandatory minimum sentence would be 15 years, and the maximum sentence would be life. The term of supervised release would be not more than 5 years. The maximum fine would remain $250,000. No matter what sentence you receive otherwise, if you plead guilty to Counts 1 and 5, the judge has to impose a $100 special assessment for each offense. So if you plead guilty to the 2 charges, it'd be a total special assessment of $200 that would be part of your sentence.

In addition, the judge has the power to order forfeiture of property and restitution.

Mr. Lammers, there's a reference to the alternative fine provisions in paragraph 4 of the plea agreement. Should we – do I need to advise defendant of those in this case?

Mr. Lammers: I don't believe so.

The Court: Okay. So I guess, Mr. Johnson, do you understand the maximum and minimum penalties that could be imposed for these charges?

The Defendant: Yes, Your Honor.

The Court: Now, you'll receive a separate sentence for each count if you plead guilty to the two counts. And so the judge would decide at sentencing whether those should run concurrently, which means at the same time, or consecutively, which means back to back. If at sentencing the judge decided to give you consecutive or back-to-back sentences, what that would mean is that the mandatory minimum, if you had a mandatory minimum on Count 5, if you were an armed career criminal for 3 prior convictions that we discussed and had that 15-year mandatory minimum, in reality between the 2 sentences, the mandatory minimum sentence you would face would really be like 30 years because it'd be 15 years on Count 1 and then 15 years on Count 5. Do you understand all of that?

The Defendant: Yes, Your Honor.

The Court: To help decide what the sentence should be, the judge will calculate how the United States Sentencing Guidelines apply in this case.

15

That calculation – and he'll do it for each count – but it results in what's called an advisory guideline range. It's just a range of months within which the sentencing commission recommends you be sentenced to prison for. Have you had a chance to talk about the sentencing guidelines before today's hearing with your lawyer?

The Defendant: Yes, Your Honor.

The Court: Now, the judge is required to consider an advisory guideline range in deciding your sentence. The judge is not bound by it, though. It is just that. It's advisory. As long as the sentence the judge gives you is reasonable, it's possible the judge might depart or vary from the advisory guideline range. If that happens, what it means is your sentence could be below or above the advisory guideline range. And again, it could be all the way up to the maximum prison sentence allowed under the law that we've discussed. Do you understand all of that?

The Defendant: Yes, Your Honor.

The Court: Now, for any mandatory minimum sentence, even if the judge departed or varied to go below an advisory guideline range in the guidelines and even if the judge wanted to, the judge could not give you a sentence of less than the statutory mandatory – mandatory minimum sentence we've talked about. The only way the judge could do that in this type of case would be, first, if you cooperated with the government; second, if the U.S. Attorney's Office believed your cooperation helped in one of their investigations or prosecutions – they call it substantial assistance – and then the government filed a motion to reduce your sentence. But specifically it would have to be the type of motion that would let the judge go below a mandatory minimum sentence.

 Now, even if all of that happened, it'd be up to the judge whether to grant the motion and, if so, how far to reduce your sentence. So I just want you to understand at least as things stand here today, if you plead guilty, there is the mandatory minimum sentence of 15 years in prison. That's the lowest sentence at this point the judge could give you, and it may be the lowest sentencing at the time of sentencing the judge could give you.

 Also if you have the 15-year mandatory minimum on Count 5, the firearm charge, under the Armed Career Criminal Act, that would be the lowest sentence at least at this point you could receive. Do you understand all of that?

16

> The Defendant: Yes, Your Honor.

Crim. Doc. 50 at 11-15. Judge Mahoney also covered the potential guideline range as contemplated by stipulations in the plea agreement. *Id.* at 20-21. Johnson stated during the hearing that no one forced or pressured him to plead guilty, made any promises outside of the plea agreement to get him to plead guilty, had promised him what his sentence would be or that he would receive a sentence below a mandatory minimum. *Id.* at 32. Prior to entering his plea, he indicated he did not feel confused or unclear about anything and he did not have any questions. *Id.* at 33.

Based on Johnson's representations during the plea colloquy, I find that he is unable to demonstrate prejudice from any alleged representations made by his counsel prior to the plea hearing as to the length of his potential sentence. Judge Mahoney explained his potential sentence to him at the plea hearing, along with the plea agreement stipulations that would be used to calculate his guideline range. Johnson repeatedly affirmed that he understood, did not have questions and that no one had forced or pressured him to plead guilty or made any promises to try to get him to plead guilty. This claim of ineffective assistance of counsel fails.

## B.  *Ineffective Assistance of Counsel During Appeal Phase*

In Claim 8, Johnson argues Plumb failed to file an appeal after being instructed to do so. Johnson states in an affidavit that on or around June 23, 2020, shortly after sentencing, he told Plumb he wanted to file an appeal. Doc. 1 at 19. He further states that at some point in August 2020, Plumb notified him by telephone that he did not feel it was in Johnson's best interest to file an appeal. Johnson states he again informed counsel that he wanted to appeal on grounds that the sentence was erroneously increased due to misapplication of the career offender guidelines.

In his affidavit, Plumb states Johnson never asked him to file an appeal and notes that on March 10, 2021, he received a letter from Johnson thanking him for his work.

*See* Doc. 7 at 79. Plumb states that it is his practice to file an appeal if requested by a client, even if he does not believe it has merit.

> The failure to file a requested appeal constitutes ineffective assistance of counsel:
>
> An attorney's failure to file a notice of appeal upon the client's request constitutes ineffective assistance of counsel, and no specific showing of prejudice is required. *Watson v. United States*, 493 F.3d 960, 963–64 (8th Cir. 2007) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)). Even if the client waived his right to appeal as part of a plea agreement, prejudice is presumed if the client asked his attorney to file a notice of appeal and the attorney did not do so. *Id.* at 964.

*Sellner*, 773 F.3d at 930. In *Sellner*, the court found that a movant's written statement in support of her § 2255 motion that she had asked her attorney to appeal was not contradictory and contained similar specificity to her trial counsel's affidavit denying that any such request was made. Because "the district court is not permitted to make a credibility determination on the affidavits alone," the court held that an evidentiary hearing was required. *Id.* at 929–30.

This case is like *Sellner* in that Johnson's statements indicate that he asked for an appeal and counsel's affidavit indicates that Johnson did not ask for an appeal. A credibility determination on those statements alone would be improper. *Id.* Admittedly, in light of my findings regarding the other issues raised by Johnson, his prospects on a future appeal are bleak. However, the Supreme Court has provided for such situations in *Anders v. California*, 386 U.S. 738 (1967), and re-affirmed the right to an appeal—no matter how hopeless the appeal may be—in *Garza v. Idaho*, 139 S. Ct. 738 (2019). Johnson is entitled to an evidentiary hearing to determine whether his trial counsel failed to appeal despite a manifest instruction to do so. Ruling will be reserved on this ground for relief.

## V. CONCLUSION

For the reasons discussed herein:

1. All claims raised in Johnson's motion (Doc. 1) under 28 U.S.C. § 2255 are **denied** for the reasons set out above, **except for** Johnson's claim of ineffective assistance of counsel based on his counsel's failure to file an appeal (Claim 8).

2. I hereby **reserve ruling** on Johnson's claim based on counsel's failure to file an appeal (Claim 8), as an evidentiary hearing is required on that claim. An evidentiary hearing, limited to Claim 8, will be scheduled by a separate order.

**IT IS SO ORDERED** this 9th day of February, 2024.

_____
Leonard T. Strand, Chief Judge